FILED

2009 Oct-28  PM 01:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **TINA M. SMITH,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CV-08-S-2153-NW** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, Tina Smith, commenced this action on November 17, 2008, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying claimant's claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ: (1) failed to fully consider her mental limitations; (2) failed to fully credit the findings of Dr. Gillis, the consultative examiner, as to claimant's hearing impairments, slow movements, and difficulty getting into and out of chairs; and (3) improperly found that claimant's past work as a counter and bar attendant constitute past relevant work. Upon review of the record, the court concludes that these contentions are without merit.

Claimant's first two arguments stem from the opinion of Dr. Frank Gillis, the consultative physician, who examined claimant on February 8, 2007. Claimant reported pain in her hands, left arm, left shoulder, upper back, shoulders, knees, and wrists. She informed Dr. Gillis that she had lost some grip strength in both hands, and that she experienced occasional swelling in her wrists. She reported a history of Hepatitis C and injury to her right leg and shoulder in a car accident. She claimed to experience slight shortness of breath with mild exertion, and an inability to sit or stand for long periods of time. She reported taking over-the-counter Ibuprofen for her pain.

Claimant had a tenth-grade education and had worked for more than thirteen

years as a truck driver, but her last job was as a bartender in 2004. She denied using alcohol or drugs, but she did admit to smoking two to three packs of cigarettes a day. Upon examination, claimant exhibited declining hearing and vision, some shortness of breath, and elevated blood pressure. She was sixty-four inches tall and weighed 245 pounds. She exhibited normal range of motion of the spine, shoulders, elbows, forearms, hips, knees, ankles, wrists, hands, and fingers. Claimant was able to get on and off the examination table, although she did so very slowly. She had to push herself out of the chair "with great effort due to her overweight problems." claimant's gait was "waddling," but she did not use any assistive device. She did not exhibit any ataxia or spasticity, and she could squat and rise without assistance. Her heel-to-toe walk was "excellent without balance problems." Her sensory functions and reflexes were intact, as were her grip strength and manipulative ability.

When asked to identify claimant's "functional restrictions," Dr. Gillis stated, "Based off [sic] exam of today and [history] given by the patient it is noted that she is mentally challenged so she would [be] limited to what types of jobs that she could be placed in." Dr. Gillis gave the following diagnoses: mild mental retardation, history of Hepatitis C and umbilical hernia repair, and status post hemmorrhoidectomy, abortion, and tubal ligation. Dr. Gillis also stated that he had considered all of the medical records provided by the Commissioner in forming his

assessment.[1]

> Claimant first argues that the ALJ
>
> erred in failing to articulate adequate reasons for not crediting Dr. Gillis'
> opinion that Mr. Smith had a hearing impairment and failed to
> adequately consider the impact of very slow movements and difficulty
> getting in and out of chairs on Ms. Smith's ability to perform the
> requirements of light work (including standing for six hours out of an
> eight hour workday).[2]

Claimant's arguments about a hearing impairment simply have no significance.

While Dr. Gillis did state that claimant experienced "decreased" hearing, he also

stated that she was "able to hear a whispered voice at a distance of 3 feet."[3]  That

assessment does not reveal any disabling (or even potentially disabling) functional

limitation that would require further discussion by the ALJ.  Further, upon review of

the ALJ's decision, the court concludes that the ALJ adequately considered

claimant's slow movements and difficulty getting in and out of chairs.  The ALJ

discussed both of these findings[4] but nonetheless concluded that claimant was capable

of performing light work.  Claimant argues that Dr. Gillis' findings about claimant's

slow movements should have led the ALJ to incorporate a sit-stand option in his

residual functional capacity assessment.  The court disagrees with claimant on this

---

[1]Tr. at 188-90.

[2]Doc. no. 9 (claimant's brief), at 9.

[3]Tr. at 188.

[4]Tr. at 11, 14.

4

point.  Claimant has not explained why a slowness in movement and difficulty getting in and out of a chair would require a sit-stand option, and the court finds that the ALJ's residual functional capacity assessment was consistent with Dr. Gillis' findings.

Claimant also argues that the ALJ erred in rejecting Dr. Gillis' opinion that claimant was mildly mentally retarded.  Dr. Gillis stated that claimant was "mentally challenged," and that she suffered from "mild mental retardation."  He based those conclusions on the exam he conducted and the history given by claimant.  The ALJ concluded that Dr. Gillis' opinion did not constitute proof of the listing for mental retardation.  The ALJ noted that claimant had not alleged a mental impairment, that Dr. Gillis made his assessment after having examined claimant on only one occasion, and that claimant had not sought any treatment or received any medication for her condition.  The ALJ further stated:

> There is no evidence of more than mild restriction of activities of daily living, mild difficulties in maintaining social functioning, or mild difficulties in maintaining concentration, persistence, or pace.  There is no evidence of episodes of decompensation, each of extended duration or that the claimant's mental disorders have resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or that the claimant has a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.[5]

---

[5]Tr. at 12.

The ALJ also stated that, in determining claimant's residual functional capacity, he assigned little weight to Dr. Gillis' opinion that claimant was mentally challenged, because "Dr. Gillis only saw the claimant on one occasion and he did not treat the claimant and this opinion appears to be based upon the history given by the claimant."[6]

Claimant argues that Dr. Gillis' opinion, coupled with claimant's school records, should have led the ALJ to conclude that claimant suffered from more than mild to moderate limitations in mental functioning, or should at least have led the ALJ to order a consultative mental examination to assess claimant's intellectual functioning.  The court acknowledges that the ALJ's reliance on claimant's failure to take medication for her condition is nonsensical, because mental retardation is not treatable by medication.  Aside from that flaw, however, the court finds no error in the ALJ's decision. There simply is no indication in the record that claimant suffered from any disabling limitations due to a mental condition.  There also was no need for the ALJ to order a consultative examination in order to obtain additional evidence. It is true that the ALJ

> has an obligation to develop a full and fair record, even if the claimant is represented by counsel.  *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981).   The ALJ is not required to seek additional independent expert medical testimony before making a disability determination *if the record is sufficient and additional expert testimony*

---

[6]Tr. at 15.

> *is not necessary for an informed decision. Wilson v. Apfel,* 179 F.3d
> 1276, 1278 (11th Cir. 1999) (holding the record, which included the
> opinion of several physicians, was sufficient for the ALJ to arrive at a
> decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988)
> (holding the ALJ must order a consultative exam when it is necessary
> for an informed decision).

*Nation v. Barnhart,* 153 Fed. Appx. 597, 598 (11th Cir. 2005) (emphasis supplied).

Here, the record was sufficient, and there was no need for an additional consultative

examination. Claimant reported to the disability examiners that she completed her

application forms without assistance, and that she reads a book every week, cooks,

cleans, cares for her dogs, watches television without memory problems, drives, runs

errands, pays bills, and manages her own money.[7] Claimant's school records do not

indicate any disabling mental impairment. Claimant was no star student, but she

passed most of her classes. Furthermore, there is nothing in the school records to

indicate that any of claimant's teachers or administrators suspected a mental

impairment, or that she ever was tested for such an impairment. Claimant has cited

no authority to support the argument that a few bad grades, standing alone, are

sufficient to support a finding of mental retardation. Finally, it is important to note

that, *after* claimant dropped out of school, she worked consistently for more than

thirteen years. Thus, any mental impairment that may have existed during claimant's

school years certainly did not result in disabling limitations, and there is no indication

---

[7]Tr. 144, 211.

that claimant's mental problems (if any) worsened after she allegedly became unable to work.

Thus, and in summary, the court concludes that the ALJ properly considered all of Dr. Gillis's assessments, and that the ALJ's decision not to fully credit some of those assessments was supported by substantial evidence.

Finally, claimant argues that the ALJ erred in finding that her past work as a counter attendant and bartender constitute "past relevant work" within the meaning of the Social Security regulations.  That characterization is significant because the ALJ's finding of no disability was based upon the conclusion that claimant retained the residual functional capacity to perform her past relevant work as a bar attendant and counter attendant — jobs that fall within the definition of light work activity. Claimant asserts that it was improper for the ALJ to consider her work in these fields because the work did not rise to the level of "substantial gainful activity." According to 20 C.F.R. § 404.1560(b), "[p]ast relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  The regulations further define "substantial gainful activity" in terms of the amount of money the claimant earned in the job.  *See* 20 C.F.R. § 404.1574.  Claimant asserts that, in any given year, she did not earn enough money as a "counter attendant" or a "bar attendant" for either of those jobs to constitute

"substantial gainful activity."  The court does not need to decide whether claimant is correct on that point because, even if claimant was not capable of performing her past relevant work at the *light* exertional level, the ALJ elicited vocational testimony during the administrative hearing that claimant would be able to perform other jobs existing in significant numbers in the national economy at the *sedentary* exertional level.  Thus, even if claimant was *more* limited than the ALJ concluded, the record reflects that she still would be able to perform substantial gainful work activity.  Consequently, even if claimant's past work as a counter attendant and bar attendant were not relevant to the disability determination process, claimant still would not be considered disabled under the relevant law.

Consistent with the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards.  Accordingly, the decision of the Commissioner is AFFIRMED.  Costs are taxed against claimant.  The Clerk is directed to close this file.

DONE this 28th day of October, 2009.

United States District Judge